KAHIUKA ET AL. *VS.* HIKAALANI HOBRON AND E. C. HOBRON,
HER HUSBAND.

In this case the relationship relied upon by the plaintiff is
that of grand-uncle to the person who died last seized.

The reasoning in the case of Makea, k., *vs.* Nalua, k., will
apply, and therefore judgment must be entered for the de-
fendant, *non obstante veredicto.*

A. S. Hartwell for plaintiff.

Messrs. Preston and Brown for defendants.

Honolulu, October 24, 1879.

---

DISSENTING OPINION OF JUDD, J.

It is prescribed by the Civil Code of 1859, that "The prop-
erty, real and personal, of a person who shall die intestate,
within this Kingdom, shall descend to and be divided among
his heirs, as hereinafter prescribed—and * * * if he
shall leave no issue, nor father nor mother, and no brother nor
sister, his estate shall descend one-half to his widow, if any,
and one-half to the brothers and sisters of his father and
mother and to their children and heirs, by right of represen-

tation; and if he leave no widow, then such collateral heirs shall inherit the whole estate; provided, always, that if the estate come through either parent, the brothers and sisters of that parent shall be preferred to the others; if the intestate shall have been married and leave no kindred but a widow, then she shall inherit all his estate; and if the intestate be a woman, and leave no kindred but her husband, then he shall inherit all her estate."

The defendant contends that the statute terminates the inheritance of collaterals with the brothers and sisters of the parents and their direct descendants, and prohibits the inheritance from going any further back, and thus cuts off the grand-parents and great-uncles and great-aunts of an intestate and their descendants, from inheriting from him.

In the discussion of this question, it becomes necessary to review the enactments of the Legislature on this subject. I find in the "Act to organize the Executive Departments," Laws of 1846, p. 199, the following: "The rules of descent and natural inheritance shall be those defined by the Civil Code." On page 101 of the same Act, I also find that lands which are patented shall never revert or escheat to the Government, * * * except * * * "for the utter default of heirs of the testate or intestate owners * * * as in the fifth part of this Act prescribed."

It is evident from the above that a statute of descent was contemplated by the Legislature to form a part of the Organic Acts of 1846. It was not enacted until 1850. It is equally evident to me that the Legislature, when it used the forcible and clear language that there should be no escheat except for the "utter default of heirs," recognized that those of the blood of the intestate were "heirs," and capable of inheriting land, though no statute of descent had then been enacted. In the case of L. Keelikolani *vs.* James Robinson, 3 Haw. Rep., 515, the Court held that at the time of the death of Kalaimoku, 1827, "there was a common law of inheritance, liable to be

modified or defeated, but perfectly good until such an event."
It is quite true that in the above quoted case, the inheritance
was of a son to his father (Leleiohoku to Kalaimoku), which
is universally conceded as being according to the "dictates of
natural affection," but from the language above used by the
Court we may rightly infer, that if the case had arisen the
Court would not have hesitated to investigate any claim of
heirship by blood, and recognize it though no statute of
descent had then been passed. The statute of descent of 1850
is the same as the present one, except that the addition of the
words "and heirs" is made in the Act of 1859, after the
words "and to the brothers and sisters of his father and
mother, and to their children," which was an evident omis-
sion in the Act of 1850.

It is noticeable that of the statutes of descent of the thirty-
six States of the American Union, but ten expressly carry the
inheritance further back than the brothers and sisters of the
father and mother and their children and heirs; but in all
these statutes there are words like the following: "If there
be neither of these, then to the next of kin in equal degree."
See Statutes of Vermont and California.

"If he leaves no issue and no father, mother, brother nor
sister, then to the next of kin in equal degree." See Statute
of Massachusetts.

In some States where grand-parents and their descendants
are prescribed as inheriting, there is added: "In cases not
provided for by the statutes, the inheritance descends accord-
ing to the course of the common law." See Statutes of
Arkansas.

Our statute contains no enactment that in cases not specific-
ally provided for by the statute, the inheritance shall descend
according to the course of the common law, nor is there a pro-
vision that in default of the relationship by the statute
declared to be capable of inheriting, the estate shall go to the
"next of kin;" but it must also be observed that there are no

express words declaring that the next of kin do *not* inherit, in default of statutory heirs. I am strongly impressed with the idea that the Legislature did intend that the next of kin should inherit in such case. They declare in the section we are considering that if the intestate " leave no kindred but a widow, then she shall inherit all his estate." Though speaking of a widow as "kindred" to her husband, is not an ordinary use of language, yet there is authority for it. However this may be, the idea is here distinctly conveyed, that the previously mentioned relationships not existing, in default of all kindred, the widow inherits all, and in like case, if the intestate be a woman then her husband.

So in Section 1451 the Act reads that "if the intestate leave no kindred, his estate shall escheat to the Hawaiian Government." This is the same as if it said, "There shall be no escheat if the intestate leave any kindred."

It is the duty of the Court to give force and effect, if possible, to every part of a statute, and to understand words in their most known and usual signification.

See Chapter III, Civil Code. Now the word "kindred" means a relation by birth or consanguinity; and it is only in default of *kindred* that the estate can escheat. It therefore follows that the plaintiff, who has shown himself to be next of kin to the person last seized, does inherit the estate, the defendant not having shown that he is nearer.

The statute nowhere says that only those kindred who are therein mentioned are to be considered as kindred; and it is forced and unnatural to say that the Legislature meant to supply the words so as to make the statute read, " If the intestate leave no kindred of the degree of those mentioned in the previous sections, his estate shall escheat to the Hawaiian Government."

It is not to be presumed that the Legislature of a country, where owing to the fact that the aboriginal population is failing, lineal heirs are often not to be found surviving, and where

remote collateral heirs are more likely to inherit, had any such intention. A construction that would cut off a grandfather from the inheritance is not to be favored, for that would be favoring escheats, and only a positive enactment of the Legislature can effect this.

It is a rule of the common law that "upon failure of lineal descendants or issue of the person last seized, the inheritance descends to the collateral relations of the first purchaser." If it were necessary in arriving at this decision the Court would be authorized by Section 823 of the Civil Code to cite and adopt the reasonings and principles of the common law on this point; but the Court, in affirming the principle that the next of kin inherit in default of heirs specifically provided for by the statute of descent, does not import into our jurisprudence a statute or usurp the function of the Legislature by adopting an arbitrary rule, for I find from the words of the statute itself that such is its obvious intent and meaning. No foreign statute that I am aware of disinherits the next of kin, and I do not think that ours intended to.

In my opinion the verdict of the jury must stand.